UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAGINAW CHIPPEWA INDIAN TRIBE OF
MICHIGAN,

        Plaintiff,

-and-

UNITED STATES OF AMERICA,

        Plaintiff-Intervenor,

v.

Case Number 05-10296-BC
Honorable Thomas L. Ludington

JENNIFER GRANHOLM, Governor of the
State of Michigan, MIKE COX, Attorney General
of the State of Michigan, JAY B. RISING,
Treasurer of the State of Michigan,

        Defendants,

-and-

CITY OF MT. PLEASANT and COUNTY OF
ISABELLA,

        Defendant-Intervenors.
_____/

## OPINION AND ORDER GRANTING CITY OF MT. PLEASANT'S AND COUNTY OF ISABELLA'S MOTIONS TO INTERVENE AS PERMISSIVE INTERVENORS

      This matter is before the Court on the City of Mt. Pleasant's ("City") and the County of Isabella's ("County") (collectively "Intervening Parties"), motion to intervene as of right, or permissively, pursuant to Federal Rule of Civil Procedure 24. The Intervening Parties contend that each is entitled to intervene as of right because the current defendants would not adequately protect their interests and that their respective motions are timely. The Court heard oral arguments on November 2, 2007.

I

The dispute arises out of treaties entered into by "Chippewas of Saginaw"[1] and the United States Government on August 2, 1855 and October 18, 1864. On November 21, 2005, Plaintiff Saginaw Chippewa Indian Tribe of Michigan ("Saginaw Chippewas") initiated the instant suit seeking "prospective declaratory and injunctive relief, requiring State officials to recognize the historic Isabella Reservation as Indian country under federal law, and prohibiting such officials from enforcing Michigan state law against the Tribe and its members within the historic Isabella Reservation in a manner inconsistent with the reservation's status as Indian country and therefore in violation of the Constitution and laws of the United States." *Am. Complaint* at ¶ 1. Specifically, the Saginaw Chippewas seek a declaratory judgment, pursuant to 28 U.S.C. §§ 2201, 2202, that the six townships within the Isabella reservation exists as an Indian reservation and that the six townships are Indian country pursuant to federal law. *Id.* at ¶ 44. Additionally, the Saginaw Chippewas request that the Court enjoin Defendants in this matter from asserting criminal or civil regulatory jurisdiction over the Saginaw Chippewas, or interfering with their rights under federal law relating to Indian County. *Id.* at ¶ 45.

Defendants in this matter are Michigan's governor, Jennifer Granholm, Michigan's attorney general, Mike Cox, and Michigan's treasurer, Jay Rising (collectively "Michigan"). Michigan contends that the Saginaw Chippewas "ceded all of their aboriginal rights to land in Michigan through a series of treaties culminating in the 1836 Saginaw Treaty." *Answer* at Aff. Def ¶ 2.

On March 2, 2006, the Saginaw Chippewas and Michigan entered into a "Joint Stipulation

---

[1] Plaintiff, the Saginaw Chippewas, contend that it is the successor of interest to the "Chippewa of Saginaw" that entered into the treaties. It appears that Michigan will contend that the treaties dissolved the "Chippewa of Saginaw" as an entity. This distinction lies at the core of this litigation and a substantive issue that will ultimately be before the Court.

Narrowing Issues Related to Jurisdictional Defenses," in which the parties agreed, among other things, that the Saginaw Chippewas only sought remedies related to jurisdiction over tribal members and did not seek remedies related to state property taxes. On May 17, 2006, this Court issued the case management and scheduling order establishing the following dates:

| | |
|---|---|
| Expert Disclosure, plaintiff: | November 17, 2006 |
| Expert Disclosure, defendant: | November 17, 2006 |
| Discovery Cutoff: | January 31, 2007 |
| Interim Status Conference: | February 15, 2007 at 2:30 p.m. |
| Motions Challenging Experts Filed By: | February 28, 2007 |
| Dispositive Motions Filed By: | February 28, 2007 |

*May 17, 2006, Court Order.*

Soon thereafter, the Court was informed that the United States Government ("United States") might seek to intervene as a plaintiff, but that the United States needed additional time to review relevant documents before determining whether it would ultimately elect to do so. In light of the United States' possible intervention, this Court issued a series of orders suspending the case management order and extending time for the United States to file a motion to intervene. Ultimately, the United States filed a motion to intervene, which the Court granted. The United States agreed to abide by the aforementioned stipulation between the parties.

On December 19, 2006, the Court modified the case management order to the following:

August 1, 2007, for disclosure of expert witness materials for all parties;
November 2, 2007, for completion of rebuttal expert materials;
March 7, 2008, for completion of discovery;
December 6, 2007 at 2:30 p.m. for a status conference;
May 30, 2008, for filing dispositive motions

*Court Order, December 19, 2006* (emphasis omitted).

Recently, the parties completed and disclosed expert witness reports, which the Court would note are of significant focus in litigation addressing Native-American treaties because of the

significance of expert testimony addressing historical events. In September of 2007, the Intervening Parties filed their motions to intervene in the instant suit.

All parties to this suit, including the Intervening Parties, were previously before this Court in a related matter. In the early to mid 1990's, the United States on behalf of the Saginaw Chippewas challenged Michigan's authority to collect *ad valorem* property taxes on upon Native-American owned land, located entirely on a reservation, and owned in fee simple absolute. See *United States on behalf of Saginaw Chippewas Tribe v. Michigan*, 882 F. Supp. 659 (E.D. Mich. 1995). In that 1995 case, the Honorable Robert H. Cleland found that "the treaty of 1855 provided for specific grants of land to various classes of Indians [and] . . . [t]he treaty of 1864 then provided a further step toward assimilation by providing for an eventual end to the relationship between Indian allottee as beneficiary and The United States as trustee (with the land as the *res*)." *Id.* at 662.

The Court recognized the "complex procedural history" of the case and twice held oral arguments to address two tiers of issues. *Id.* at 661. First, the Court heard arguments "with regard to the issue of reservation status (i.e., whether a reservation was created and whether, if created, it was diminished) and tribal status (i.e., whether the tribe was dissolved pursuant to the treaty of 1864). *Id.* at 661-62. Second, the parties addressed "the propriety of levying *ad valorem* property taxes." *Id.* at 662. In the Court's opinion, it expressly declined to address the first issue, reasoning that it was inconsequential to the issue of whether Michigan could impose *ad valorem* property taxes. *Id.* at 663. The Court held that the land in question was subject to *ad valorem* taxation because it was held in fee simple absolute and freely alienable. *Id.* at 677.

The Sixth Circuit reversed, holding that Michigan could not tax land held in fee simple by the Saginaw Chippewas members without express congressional authorization. *United States on*

*Behalf of Saginaw Chippewas Tribe v. Michigan*, 106 F.3d 130, 131-32 (6th cir. 1997). The Sixth Circuit remanded the case for the district court to make a determination about the status of the reservation and the tribe.

Michigan appealed to the Supreme Court, which granted certiorari, vacated the judgment, and remanded to the Sixth Circuit for further consideration in light of its decision in *Cass County v. Leechlake Band Chippewa Indians*, 524 U.S. 103 (1998). *Michigan v. United States*, 524 U.S. 923 (1998). In *Leechlake*, the Supreme Court held that state governments may impose *ad valorem* taxes "on reservation land that was made alienable by Congress and sold to non-Indians by the Federal Government, but was later repurchased by a tribe," because "under the test established by our precedents, Congress has made "unmistakably clear" its intent to allow such taxation." *Leechlake*, 524 U.S. at 106. After the Supreme Court remanded the matter to the Sixth Circuit, the parties consensually dismissed the case.

II

The Intervening Parties contend that each is entitled to intervention as a right and, in the alternative, should be permitted to intervene. Federal Rule of Civil Procedure 24 provides for intervention of right and permissive intervention. In relevant part, Rule 24 provides:

> (a) **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
> (b) **Permissive Intervention.** Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute

or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The Sixth Circuit requires the consideration of four factors to grant an application to intervene by right: "(1) timeliness of the application to intervene, (2) the applicant's substantial legal interest in the case, (3) impairment of the applicant's ability to protect that interest in the absence of intervention, and (4) inadequate representation of that interest by parties already before the court." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997) (citation omitted).

The Sixth Circuit uses the following factors to determine timeliness under Rule 24: "(1) the point to which the suit had progressed; (2) the purpose for which intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) the prejudice to the original parties due to the proposed intervenor's failure after he knew or reasonably should have known of his interest in the case to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention." *Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1228 (6th Cir. 1984) (citation omitted).

Regarding the substance of the legal interest, courts should construe Rule 24 broadly in favor of proposed intervenors. *See Michigan State AFL-CIO*, 103 F.3d at 1245-1246 (citations omitted); *see also Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999), rev'd on other grounds at 539 U.S. 244 (2003) (reiterating the "rather expansive notion" of interest sufficient for intervention). Regarding the element of impairment, the "burden is minimal" to show impairment of a proposed intervenor's interests. *Id*. at 1247. Even the precedential effect of an adverse decision on future possible litigation will suffice. *Id*. Finally, as to inadequate representation, the burden is again

minimal – showing that the current parties would not make all of a proposed intervenor's arguments or that they have not appealed can suffice. *Id.* at 1247 (citations omitted). A proposed intervenor need show only the potential for inadequate representation. *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 539 n.10 (1972); *Linton v. Commissioner of Health and Environment*, 973 F.3d 1311, 1319 (6th Cir. 1992).

The Sixth Circuit's liberal approach has generally resulted in granting applications to intervene of right. *See, e.g., Miller*, 103 F.3d 1248 (permitting a chamber of commerce to intervene in a case between a labor union and the state secretary of state); *Grutter,* 188 F.3d 394 (ruling that potential students had a substantial interest in a case concerning university admissions policies). A rare exception in which a court denied intervention of right turned exclusively on the proposed intervenor's timeliness, although the court still endorsed construing the rule liberally in favor of proposed intervenors. *Stupak-Thrall v. Glickman*, 225 F.3d 467, 472 (6th Cir. 2000), subsequent appeal at 346 F.3d 579 (6th Cir. 2003) (involving landowners suing the Forest Service, with environmental groups attempting to intervene).

Yet a more recent Sixth Circuit decision on Rule 24 represents an incursion on its liberality. In *Jordan v. Michigan Conference of Teamsters Welfare Fund*, 207 F.3d 854, 863 (6th Cir. 2000), the court listed factors not recited in several of the above-mentioned cases. "[A] movant fails to meet his burden of demonstrating inadequate representation when 1) no collusion is shown between the existing party and the opposition; 2) the existing party does not have any interests adverse to the intervenor; and 3) the existing party has not failed in the fulfillment of its duty." *Id.* at 863 (citing *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987)). The court proceeded to affirm the denial of the proposed intervenor union. The plaintiffs, union members, sought to recover funds from an

ERISA plan. The court concluded that the plaintiffs and the proposed intervenor had aligned interests. *Id*. at 863. The proposed intervenor did not identify any arguments that supported its position that the plaintiffs did not advance, and the proposed intervenor suggested only a difference in vigor of litigation. *Id*.

In contrast, in *Grutter*, the court stated that the proposed intervenor "articulated specific relevant defenses that the plaintiff [might] not present," which showed the inadequacy of representation by the existing parties for the proposed intervenor. *Grutter*, 188 F.3d at 401 (suggesting that the defendant would not advance arguments offered by proposed intervenor, such as the defendant's alleged history of discrimination).

Generally, the discussion of permissive intervention receives little attention because permitting intervention of right moots that consideration. *See, e.g., Grutter*, 188 F.3d at 401; *Miller*, 103 F.3d at 1248 (also noting that a proposed intervenor's participation as an amicus curiae diminished any basis for contesting a denial of permissive intervention); *but see Purnell v. City of Akron*, 925 F.2d 941, 950-951 (6th Cir. 1991) (providing a longer discussion of the import of timing for Rule 24(b) motion, although the appellate court permitted intervention of right). It is well-settled, however, that permissive intervention "is directed to the sound discretion of the district judge." *Meyer Goldberg, Inc. v. Goldberg*, 717 F.2d 290, 294 (6th Cir. 1983); see also *Brewer v. Republic Steel Corp.,* 513 F.2d 1222, 1225 (6th Cir. 1975). Implicit in a district court's discretion to grant or deny an application for permissive intervention is "discretion to limit intervention to particular issues." *Van Hoomissen v. Xerow Corp.,* 497 F.2d 180, 181 (9th Cir. 1974) (citing *Ionian Shipping Co. v. British Law Ins. Co.,* 426 F.2d 186, 191-92 (2d Cir. 1970).

The Intervening Parties assert that each is entitled to intervene as right. Applying the factors

as set forth in *Michigan State AFL-CIO v. Miller*, the Court finds that the Intervening Parties are not entitled to intervene as a right. First, the Intervening Parties' motions are untimely. The case was originally filed in November of 2005, accompanied by local press coverage. *Saginaw Chippewas's Opposition Brief, Exhibit 1.* In order to focus the litigation, the parties entered into a stipulation limiting the number and scope of issues to be litigated. The Court issued a scheduling order, which it delayed upon timely notice of the United States as a possible intervenor. Once the Court granted the United States' motion to intervene, the Court issued a revised scheduling order.

The parties began preparation of expert reports, which are the evidentiary nucleus of this type of litigation. The scheduling order set August 1, 2007 as the date for export report disclosure. The Intervening Parties filed their motions to intervene in September of 2007. Additionally, the Court ordered the parties to complete expert rebuttal material by November 2, 2007. At this juncture, intervention by the Intervening Parties would bring preparation of the case to a crawl because all parties would have to pause discovery in anticipation of both the Intervening Parties' expert reports. It is precisely such a concern that underscores the requirement for intervention to be timely sought. At the time that the Intervening Parties filed their motions, the posture of this case was long past initial trial preparation. Moreover, the Intervening Parties' participation in the past case coupled with the local media coverage, indicate that the Intervening Parties had sufficient notice of this proceeding.

Additionally, the Court finds that the Intervening Parties' interests are adequately represented by Michigan as any particular interest they might advance is necessarily derived from the state. That is "[m]unicipal corporations have no inherent power. They are created by the state and derive their authority from the state." *Bivens v. Grand Rapids*, 505 N.W.2d 239 (Mich. 1993). "Article 7 of the

Constitution of 1963 enumerates the general authority and limits on the authority of local governments, such as counties, townships, cities, and villages. Subject to [the] authority specifically granted in the Constitution, local governments derive their authority from the Legislature." *City of Taylor v. Detroit Edison Co.*, 715 N.W.2d 28, 31(Mich. 2006) (citation omitted); See MICH. CONST. art. 7 §§ 1, 17, 21. Michigan's legal interests and that of the Intervening Parties, are sufficiently coordinated to motivate them to maintain jurisdiction over the disputed territory. While the Intervening Parties identify matters of local municipal responsibility that they argue would be affected by the decision, zoning and law enforcement for example, neither can identify any argument related to the substantive issues they believe the state will not pursue vigorously enough. Thus, the Intervening Parties have not satisfied the Court that either is entitled to intervene as a right; their motions are untimely and they have not establish that their interests would not be adequately represented.

Notwithstanding that conclusion, the Court recognizes that the Intervening Parties have a legitimate interest at stake in this litigation, because an outcome in favor of the Saginaw Chippewas could materially affect their future governmental responsibilities. Moreover, the Intervening Parties have advanced particular concerns that they would best understand in the event that a remedy should be fashioned.

Federal Rule of Civil Procedure 24(b) provides the Court discretion to permit intervention while still considering possible undue delay or prejudice that intervention may have on existing parties. In this instance it is appropriate for the Court to exercise its discretion to grant the Intervening Parties' motions to permissively intervene subject to limitations. Specifically, the Intervening Parties will be precluded from preparing individual expert reports and must abide by the

stipulation as previously agreed to by the parties. Allowing the Intervening Parties to permissively intervene under these parameters would not unduly delay the parties in this case, while allowing both the opportunity to assert arguments on their own behalf.

In its brief and oral argument, the County represented that it would not oppose permissive intervention subject to such conditions. The City objected to the conditions with the belief that it was entitled to intervention as right. At oral argument, however, the City contended that it would accept the conditions if the Court was inclined to deny its motion to intervene as right. Having found that the Intervening Parties are not entitled to intervention as a right, the Court will grant the Intervening Parties' motions to permissively intervene in this matter as defendants.

### III

Accordingly, it is **ORDERED** that the City of Mt. Pleasant's and the County of Isabella's motions to intervene as defendants [dkt # 39, 41] are **GRANTED**. The Court grants these motions pursuant to Fed. R. Civ. P. 24(b) on the following conditions: The City of Mt. Pleasant and the County of Isabella will be subject to the March 2, 2006 joint stipulation between the parties. The City of Mt. Pleasant and the County of Isabella shall not be allowed to prepare individual expert reports, nor prepare expert rebuttal reports.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
The United States District Judge

Dated: November 16, 2007

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 16, 2007

        s/Tracy A. Jacobs
        TRACY A. JACOBS