UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAGINAW CHIPPEWA INDIAN TRIBE OF
MICHIGAN,

        Plaintiff,

-and-

UNITED STATES OF AMERICA,

        Plaintiff-Intervenor,

v.

JENNIFER GRANHOLM, Governor of the
State of Michigan, MIKE COX, Attorney General
of the State of Michigan, and JAY B. RISING,
Treasurer of the State of Michigan,

        Defendants,

-and-

CITY OF MT. PLEASANT, and COUNTY OF
ISABELLA,

        Defendant-Intervenors.
_____/

Case Number 05-10296-BC
Honorable Thomas L. Ludington

**ORDER PROVIDING FOR COMPLETION OF DISCOVERY, AMENDING
SCHEDULING ORDER, DENYING MOTION IN LIMINE, GRANTING MOTION TO
CORRECT, AND CORRECTING ORDER GRANTING IN PART AND DENYING IN
PART WITHOUT PREJUDICE MOTION FOR SANCTIONS**

The relevant events in this case date to 1855, when the predecessors of Plaintiff Saginaw

Chippewa Indian Tribe of Michigan ("Saginaw Chippewa") entered into a treaty with Plaintiff-

Intervenor United States ("United States"). Treaty with the Chippewa of Saginaw, Etc., U.S.-

Chippewa, Aug. 2, 1855, 11 Stat. 633 ("1855 Treaty"). In the 1855 Treaty, the United States

withdrew from sale "unsold public lands" in six townships in Isabella County, Michigan, "for the

benefit" of the Saginaw Chippewa. *Id.* at Art. 1.  In return, the Saginaw Chippewa ceded to the United States "all the lands within the State of Michigan heretofore owned by them as reservations[,]" and discharged the United States from liability for the "price and value" of those lands. *Id.* at Art. 3.  Nine years later, the parties to the 1855 Treaty entered into a second treaty, which modified the first by, inter alia, relinquishing the Saginaw Chippewa's ownership of property located adjacent to Saginaw Bay of Lake Huron.  Treaty with the Chippewa of Saginaw, Swan Creek, and Black River, U.S.-Chippewa, Oct. 18, 1864, 14 Stat. 657 ("1864 Treaty").

The Saginaw Chippewa's complaint alleges that pursuant to the two treaties, the six townships became "Indian country" subject to the jurisdiction of the Saginaw Chippewa.  Am. Cmpl. ¶ 1; [Dkt. # 17].  The complaint seeks declaratory and injunctive relief, requiring Defendant officials of the State of Michigan (collectively "Michigan" or "Michigan Defendants") to recognize the six townships as Indian country and "prohibiting [the Michigan Defendants] from enforcing Michigan state law against the [Saginaw Chippewa] and its members within" the six townships. *Id.*

Now before the Court are the parties varying proposals for an amended scheduling order, as discussed during an August 19, 2009 telephone conference [Dkt. # 179]; Michigan's motion in limine to exclude the Saginaw Chippewa's unnamed witnesses, which Michigan admitted was moot during the conference [Dkt. # 141]; the City of Mt. Pleasant's motion to amend or correct [Dkt. # 181] the Court's recent order granting in part and denying in part the Saginaw Chippewa's earlier motion for sanctions [Dkt. # 180]; and an objection to the City's most recent witness list, which generally objects to this Court's earlier order bifurcating the trial into separate stages for claims and defenses and, if appropriate, consideration of remedies [Dkt. # 183].  A brief discussion of the Court's earlier orders is merited, in an effort to better chart a path to resolution of the dispute.

I

As indicated earlier, resolution of this case will eventually require interpretation of two treaties, which were ratified by the United States Senate 150 years ago. Up to this juncture, however, the parties and the Court have not focused on the treaties themselves, but on ensuring that all interested parties have a seat at the table, and identifying and excluding the types of evidence that are clearly irrelevant to interpreting the treaties.

A

Beginning in mid-2006, the Court permitted a series of delays to permit the United States to consider the merits of the case [Dkt. # 22–25, 27–29].  The United States then requested to intervene as a plaintiff, endorsing the relief sought by the Saginaw Chippewa [Dkt. # 29], and was permitted to do so on November 1, 2006 [Dkt. # 31].

In September 2007, nearly two years after the case was filed, the City of Mt. Pleasant and Isabella County sought to intervene as defendants [Dkt. # 39, 41].  Unlike the United States' motion to intervene, which was unopposed, the City and County met with opposition from the United States and the Saginaw Chippewa (collectively "Plaintiffs").  Plaintiffs were concerned that permitting the City and County to intervene so late in the case would unnecessarily delay the litigation.  *See* Op. & Order Granting City of Mt. Pleasant's & County of Isabella's Mots. to Intervene as Permissive Intervenors at 3; 9–12 ("Op. on Mot. to Intervene"); [Dkt. # 50].  At the time the motions to intervene were filed in September 2007, the expert witness reports, which are of critical importance, were due in a month, and discovery was scheduled to end in less than six months. Or. Granting Mot. for Modification of Case Management and Scheduling Order; [Dkt. # 37]. Reopening discovery and providing for additional expert witness disclosures pursuant to Rule 26(a)(2) would significantly

delay the case. Recognizing Plaintiffs' concerns, the Court concluded that both the City and County could permissively intervene, Fed. R. Civ. P. 24(b), However, to avoid bringing "preparation of the case to a crawl," the City and County were "precluded from preparing individual expert reports" or calling their own expert witnesses. Op. on Mot. to Intervene at 9–11. The Court noted that the City and County have no "inherent power" and that they "derive their authority" from the State of Michigan, and as such, their interests were adequately represented by the existing state defendants and their experts. *Id.*

The City and County were also ordered to abide by a previously entered stipulation [Dkt. # 15], narrowing the issues in the case. *Id.* Specifically, the parties agreed in the stipulation that the "central issue" in the case was whether the six townships named in the treaties were "Indian country pursuant to federal law." *Id.* at 2. The Saginaw Chippewa also agreed to voluntarily dismiss the State of Michigan and an environmental quality official as defendants, to end their pursuit of remedies related to payment of state property taxes, and to refrain from advancing claims regarding jurisdiction over non-Indians present in the six townships. *Id.*

B

Moving to the second inquiry, the parties submitted two rounds of motion practice, which focused first on the admissibility of evidence supporting the Michigan Defendants' time-based equitable defenses, including laches,[1] and next on whether "jurisdictional facts" demonstrating the "justifiable expectations" of persons affected by the treaties were relevant to the interpretation of the treaties.[2] *See* Op. & Order Granting Defs.' & Def. Intervenors' Mot. to Am. Answers, Granting

---

[1] *See* City of Sherrill v. Oneida Indian Nation of N.Y., 544 U.S. 197 (2005).

[2] *See* Rosebud Sioux Tribe v. Kneip, 430 U.S. 584 (1977).

the U.S.' Mot. in Limine & for Partial Summ. J., Granting Saginaw Chippewa's Mot. to Strike, Den. U.S.' Mot. to Strike Exs., Den. as Moot Mich.'s Mot. to File Sur-Reply, & Bifurcating Case on Court's own Mot. ("Laches Order"); [Dkt. # 121]; Op. & Order Granting U.S.' Mot. in Limine & Granting Saginaw Chippewa's Mot. to Strike ("*Rosebud Sioux* Order"); [Dkt. # 161].

In the Laches Order, the Court decided that the Michigan Defendants' time-based equitable defenses were inapplicable, and concluded that the "testimony and proofs offered in support of these affirmative defenses [were] irrelevant." Laches Order at 40. The Court distinguished *City of Sherrill v. Oneida Indian Nation of N.Y.*, 544 U.S. 197 (2005), where time-based equitable defenses were held to bar suit, based on the fact that the character of the claims and the remedies sought in this case were distinct from those sought in *Sherrill*. Laches Order at 37–40.

In *Sherrill*, the Oneida Indian Tribe had ceded 100,000 acres of land to the State of New York in 1795, and sought a declaration that the 200-year-old transaction had violated a federal statute, as well as an injunction against local taxation of portions of that land which had been recently reacquired by the tribe. 544 U.S. at 197–99. By contrast, the Saginaw Chippewa are not seeking to avoid local taxation or disrupt the title to land in the six townships. Rather, their suit asks for a declaration that they retained rights to self-government under the 1855 and 1864 treaties. Laches Order at 38. Unlike in *Sherrill*, the remedy sought by Plaintiffs is not predicated on reversing an ancient wrong for the benefit of a modern real estate transaction, it is simply a request for a declaration that the Saginaw Chippewa have retained jurisdiction over historic tribal land. Consequently, the Court resolved that Defendants were not entitled to introduce evidence of the contemporary character, use, and governance of the land to support a time-based equitable defense.

Next, in the *Rosebud Sioux* Order, the Court addressed the question of whether such evidence, referred to as "jurisdictional facts," was nevertheless "admissible as instructive of the parties' intentions as to the treaties themselves." *Rosebud Sioux* Order at 6; *see also Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584 (1977) (holding that so-called jurisdictional facts may be relevant to the determination of whether Congress intended to diminish the size of an Indian reservation via a series of four enactments). The Court distinguished *Rosebud Sioux*, noting that while it supported the "general notion that jurisdictional facts illuminate the 'understanding' of the affected parties . . . with respect to the interpretation of a later congressional action," such facts cannot assist in interpreting a treaty because a treaty is a negotiated agreement, like a contract, while a congressional enactment is a unilateral pronouncement. *Rosebud Sioux* Order at 11. Therefore, in a case such as this, where no subsequent congressional action is implicated, the intentions of outside parties, as demonstrated by jurisdictional facts, are irrelevant. *Id.*

In short, jurisdictional facts—information about the post-treaty conduct of the people living in the six townships and the government agencies exercising jurisdiction and providing services in the area—would be relevant if the Court were addressing the question of whether a later act of Congress diminished the size of the reservation as set forth in the treaties. But the state, city, and county, unlike Congress, have no power to diminish the size of the reservation. Consequently, their contemporary impressions about the existence, size, and location of any reservation, as inferred from their actions and the actions of their constituents, are not relevant to the question of whether the treaties identified the six townships as Indian country. The most important evidence is, of course, the language of the treaties themselves, and evidence that tends to demonstrate how the signatories to those treaties understood their language in 1855 and 1864.

II

In the most recent order in this case [Dkt. # 180], the Court granted in part and denied in part without prejudice Saginaw Chippewa's motion for sanctions [Dkt. # 168, 173, 175], which was filed in response to the City of Mt. Pleasant's third amended witness list. The order provided that the Court would "preclude" the City from identifying any Phase I witnesses under the Court's "inherent authority to impose sanctions." *See Hill v. Mr. Money Finance Co.*, 309 F. App'x 950, 967 (6th Cir. 2009). But it later directed the City to file a fourth amended witness list, consistent with all previous orders, and accompanied by "a succinct explanation of the witnesses' intended testimony and the relevance of the testimony to the defenses developed by the State of Michigan . . . ." As the City emphasized in its motion to amend or correct the order [Dkt. # 181], defenses developed by Michigan will be addressed in the first phase of the trial, so if the City is precluded from calling Phase I witnesses, it will necessarily be prohibited from calling witnesses to address Michigan's defenses. The inconsistency in the order requires clarification.

In an attempt to comply with the Court's order, the City filed a fourth amended witness list [Dkt. # 182] on August 24, 2009 that names only Phase II witnesses. The listed witnesses primarily consist of current and former city officials, including city managers, court clerks, a city attorney, and a city public works director. According to the descriptions provided by the City, those witnesses would testify primarily to the types of jurisdictional facts that the Court has held are not relevant during Phase I, but may be relevant if a remedial phase is required. Other witnesses listed by the city include state, county, and tribal officials, who would also offer jurisdictional fact evidence. The City's list also includes two of Michigan's experts, and Greg Benford, of Isabella Abstracts.

In response to the City's fourth amended witness list [Dkt. # 182], the Saginaw Chippewa

-7-

filed another objection [Dkt. # 183], arguing that the witnesses on the City's list still do not comply with the Court's Laches and *Rosebud Sioux* Orders, and perhaps more significantly, that the Court erred in deciding to bifurcate the trial into two phases.

> As stated in its Witness Challenges last November, the Tribe agrees with the United States in questioning the utility of a remedial phase of this case. The Tribe and the United States have asked the Court to declare what the boundaries of the Tribe's reservation are, and the Tribe has asked the Court to enjoin the Defendants from taking actions inconsistent with the reservation status of lands within the reservation boundaries. If the Court determines that the exterior boundaries of the reservation run the course of the six townships described in the Treaties of 1855 and 1864, then 18 U.S.C. § 1151(a) mandates that all lands within the reservation are Indian Country, and the remedy is to apply federal law by issuing the requested injunction—no more and no less.

Objection to City of Mt. Pleasant's Fourth Am. Witness List at 1–2; [Dkt. 3 183].

The Saginaw Chippewa may be right—the remedy, *if one is merited*, may be no more than a declaration that the six townships are Indian country and an associated injunction with respect to future conduct. But any discussion of the appropriate remedy must await a conclusion as to whether the six townships are Indian country at all. If they are not Indian country, there will be no remedial phase, and if they are Indian Country, the Court will then decide whether a Phase II is necessary to fashion a remedy.

Moreover, although the City's witness list does not identify Phase I witnesses, the descriptions accompanying it suggest that a few of the witnesses may be able to provide testimony relevant to Phase I. Earlier orders, while focused primarily on expert witnesses, contemplated that a number of lay witnesses might be necessary during Phase I to authenticate records used in cross examination of experts. For example, the City's first witness, Greg Benford, has compiled abstracts and deeds from the six townships dating to 1850. *See* City of Mt. Pleasant's Fourth Am. Witness List at 2–4; [Dkt. # 182]. Mr. Benford may not offer opinion testimony, because the City is

precluded from calling experts, but the City may nevertheless call him during the first Phase of the trial to authenticate historic records that may then be used to impeach the Plaintiffs' experts. State expert Anthony C. Olkowski could serve as a similar witness for the City. The City may not call or examine him as an expert, but they may call him to authenticate maps or other geographic records, not already in evidence,[3] that may then be used to cross examine Plaintiffs' experts. Accordingly, all parties shall have an opportunity, if they choose, to amend their witness lists by October 14, 2009 to include Phase I lay witnesses of the type anticipated by this order.

III

It is time for this case to move forward. It has been pending for nearly four years, and is the oldest open case on the Court's docket. *See* Civil Justice Reform Act, 28 U.S.C. §§ 471–82, 476(a)(3) (requiring that cases which have not been terminated within three years of filing be disclosed to the public in a semiannual report). Expert reports are complete, and the parties indicated during the August 19, 2009 telephone conference that all other discovery is nearly complete. The parties also indicated that a trial date during the summer of 2010 will work best because many of the expert witnesses are academics who have teaching duties at other times of the year. With that in mind, the Court will reopen discovery until November 23, 2009 and issue a new scheduling order that the Court anticipates will serve as a blueprint for moving the case toward resolution.

It should also be noted, however, that the Court has not yet seen the expert reports or *Daubert* motions, and depending on the content of those papers, amendments to the scheduling order

---

[3] Some of these records or documents may not even be admissible, due to hearsay or other problems. Yet if they are "of the type reasonably relied upon by experts in the particular field" they may be used as a basis for the expert's opinion and for cross examination. Fed. R. Evid. 703.

may be required.  The Court must, of course, develop this scheduling order with little information about he merits of the case and the proofs the parties will seek to offer.  It is with that understanding that the Court also acknowledges that further attention may be needed to scheduling concerns, and invites the parties to accept responsibility for consensual resolution of these matters, and in default, the parties motions as necessary.

IV

Accordingly, it is **ORDERED** that discovery relevant to Phase I only is reopened and may continue until **November 23, 2009**.

It is further **ORDERED** that all parties may submit an amended witness lists consistent with this and all other orders on or before **October 14, 2009**.

It is further **ORDERED** that the scheduling order is **AMENDED** as follows:

- *Daubert* motions, and accompanying expert reports, shall be filed on or before **November 23, 2009**.  The parties are **DIRECTED** to submit the reports electronically in a format convenient for the Court to review.

- Dispositive motions shall be filed on or before **February 1, 2010**.

- Responses to dispositive motion shall be filed on or before **March 3, 2010**.

- Replies to responses to dispositive motions shall be filed on or before **March 18, 2010**.

- Nondispositive motions shall be filed on or before **June 30, 2010**.

- The final pretrial conference will be held on **July 20, 2010 at 2:30 p.m.**

- Trial will begin on **August 10, 2010 at 8:30 a.m.** at the United States Courthouse in Bay City, Michigan, and is expected to last three weeks.

- The Court will not impose limits on the length of direct or cross examination of the witnesses at this time.

It is further **ORDERED** that Michigan's motion in limine [Dkt. # 141] is **DENIED AS MOOT** in accordance with its admission during the August 19, 2009 telephone conference.

It is further **ORDERED** that the City of Mt. Pleasant's motion to correct [Dkt. # 181] the order on sanctions [Dkt. # 180] is **GRANTED**, and the order granting in part and denying in part without prejudice Saginaw Chippewa's motion for sanctions is corrected in accordance with this order.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 28, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 28, 2009.

s/Tracy A. Jacobs
TRACY A. JACOBS