UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SAGINAW CHIPPEWA INDIAN TRIBE OF
MICHIGAN,

                Plaintiff,

-and-

UNITED STATES OF AMERICA,

                Plaintiff-Intervenor,

v.

                Case Number 05-10296-BC
                Honorable Thomas L. Ludington

JENNIFER GRANHOLM, Governor of the
State of Michigan, MIKE COX, Attorney General
of the State of Michigan, ROBERT J. KLEINE,
Treasurer of the State of Michigan, and the STATE
OF MICHIGAN,

                Defendants,

-and-

CITY OF MT. PLEASANT, and COUNTY OF
ISABELLA,

                Defendant-Intervenors.
_____/

## **ORDER GRANTING JOINT MOTION FOR "ORDER FOR JUDGMENT"**

In July 2010, less than one month before trial, the parties informed the Court that they were close to settling this case, which commenced more than five years ago. The settlement, which was finalized in November 2010, consists of an "Order for Judgment," which is now before the Court, and twelve intergovernmental agreements. The Order for Judgment provides for permanent recognition of the Isabella Reservation as established by the 1855 executive order issued by President Pierce, the 1855 Treaty with the Chippewa of Saginaw, Etc., U.S.-Chippewa, Aug. 2,

1855, 11 Stat. 633 ("1855 Treaty"), and the 1864 Treaty with the Chippewa Indians, U.S.-Chippewa, Oct. 18, 1864, 14 Stat. 657 ("1864 Treaty"). The Isabella Reservation consists of all lands within the contiguous area comprised by the townships of Wise, Denver, Isabella, Nottawa, Deerfield, and one-half each of Chippewa and Union, as well as a smaller parcel of land located in Arenac County on the Saginaw Bay and a small parcel in Isabella County. [Dkt. # 271-A]; 48 Fed. Reg. 40790 (Sept. 9, 1983). The Order for Judgment also provides for the final resolution of this lawsuit, and recognizes this Court's jurisdiction to enforce the terms of the Order for Judgment and the intergovernmental agreements.

The intergovernmental agreements are contracts negotiated by the parties during the mediation process. The intergovernmental agreements provide the specific terms and conditions of the settlement. The intergovernmental agreements include five contracts between the State of Michigan and the Saginaw Chippewa, concerning enforcement of the Indian Child Welfare Act, law enforcement, state sales taxes, fuel taxes, income taxes, tobacco taxes, business taxes, and natural resources and conservation. Four agreements between the City of Mt. Pleasant and the Saginaw Chippewa concern zoning and land use within the city, law enforcement within the city, revenue generated by city property taxes, and local regulations. Three agreements between Isabella County and the Saginaw Chippewa concern zoning and land use within the county, law enforcement within the county, and revenue generated by county property taxes.

On November 9, 2010, the Saginaw Chippewa Indian Tribe of Michigan, the United States, the State of Michigan, Governor Jennifer Granholm, Treasurer Robert J. Kleine, the City of Mt. Pleasant, and the County of Isabella (collectively "settling parties") filed a joint motion asking the Court to enter the Order for Judgment, accept the intergovernmental agreements, and dismiss the

case with prejudice. Attorney General Mike Cox did not join the motion. Instead, the Attorney General filed three objections to the joint motion and intergovernmental agreements on November 10, 2010. Also on November 10, the Court set the joint motion for hearing on November 23, 2010, and established a procedure for accepting public comments with respect to the proposed Order for Judgment and the intergovernmental agreements. After reviewing the joint motion, the Attorney General's objections, the proposed Order for Judgment, the intergovernmental agreements, and the public comments, the Court granted the joint motion and agreed to enter the Order for Judgment on November 23, 2010. At the time, the Court emphasized the extraordinary effort undertaken by the parties and the innumerable benefits provided by the negotiated agreements. The Court also explained its reasons for entering the Order for Judgment of ther Attorney General's objections, which are set forth in more detail below.

I

In his first objection, Attorney General Cox contends that the Order for Judgment and intergovernmental agreements on law enforcement should not treat "sold lands" within the boundaries of the Isabella Reservation as Indian country. The treaties reserved only "unsold lands" for the benefit of the Tribe. As a result, the Attorney General argues, lands that had already been sold or deeded to the State of Michigan at the time the treaties were ratified were never part of the Isabella Reservation and should not be made part of the Isabella Reservation by the settlement. The Attorney General emphasizes two Michigan Court of Appeals' decisions that reached a similar conclusion when interpreting the treaties. *See Moses v. Dep't of Corrs.*, 274 Mich. App. 481 (2007); *People v. Bennett*, 195 Mich. App. 455 (1998).

In response, the settling parties emphasize that negotiations concerning "unsold lands" were

conducted and the issue was resolved more than a year ago. They also note that *Moses* and *Bennett* were decided without the benefit of the extensive historical evidence that was compiled for this case. Additionally, Indian treaty interpretation is controlled by federal law. Accordingly, while *Moses* and *Bennett* are instructive, they are not precedential authority.

Ultimately, whether or not "sold lands" were intended to be part of the Isabella Reservation was one of many legitimate questions that were not unequivocally resolved by the language of the treaties. The treaties make clear that "sold lands" were not available for allotment, but they do not address whether the parties to the treaties intended to exclude "sold lands" from the sovereign jurisdiction of the Tribe. The Attorney General's interpretation can be grounded in the language of the treaties, but so can the settling parties' interpretation. The point, nevertheless, is that the settling parties reached a compromise and determined that the "sold lands" should be included within the reservation, and in return, the Tribe would also share some of its sovereign authority over those lands. The Saginaw Chippewa, for example, agreed to make certain payments in lieu of property taxes on land that is placed in trust and to cross deputize county and city law enforcement officers to enforce tribal law.

Settlements require compromise, and the compromise reached here is both reasonable and in the public's interest. *See, e.g.*, *United States v. Lexington-Fayette Urban Cnty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010). The Reservation boundaries described in the settlement will eliminate the jurisdictional patchwork that has forced law enforcement officers and prosecutors to consult a map before making an arrest or pursuing criminal charges. *See Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351, 357–59 (1962) (discussing the problems with "checkerboard" jurisdiction). Moreover, the Order for Judgment specifically provides that existing criminal

convictions will not be disrupted by jurisdictional changes created by the settlement. Accordingly, the Attorney General's first objection is reasonably addressed by the settling parties.

The Attorney General next objects to any limitations on the ability of state police officers to enter the "Tribal Enclave" for law enforcement purposes. The Tribal Enclave is a small parcel within the Isabella Reservation, which includes land owned by the Tribe and viewed by the Tribe as essential to its sovereignty. State police can enter the Tribal Enclave only if they are responding to an emergency call, in "fresh pursuit" of a suspect, or with authorization from the Tribal Police. The Attorney General contends that the restrictions are inconsistent with *Nevada v. Hicks*, 533 U.S. 353 (2001). In *Hicks*, the Supreme Court held that a tribal court's jurisdiction is limited with respect to non-Indian actors, even as to events that took place within Indian country and on land owned by a tribe. *Id.* at 358–60. Accordingly, a tribal member cannot sue a state game warden in tribal court for executing a search warrant within Indian country where the game warden was seeking evidence of a crime that occurred outside Indian country.

The procedures described in the law enforcement agreement are consistent with *Hicks* and the interests of the public. The agreement does not limit the authority of the state police to enforce state law within the Tribal Enclave. Rather, it simply requires that the state police officers follow certain procedures before entering the Tribal Enclave. The state police will still be able to execute state-issued search warrants within the Tribal Enclave after obtaining authorization from the Tribal Police. In the event of an emergency, however, pre-authorization is not required. The agreement is a compromise that enables the Tribe to retain a higher degree of sovereignty within the Tribal Enclave without sacrificing public safety. Accordingly, the Attorney General's second objection is also reasonably addressed by the settling parties.

The Attorney General's final objection relates to the procedures established by the parties and the Court for soliciting public comments on the proposed Order for Judgment and intergovernmental agreements. The Attorney General emphasizes that other states, including North Dakota and Montana, require public comment before an agreement between a tribe and the state can be finalized. In response, the settling parties emphasize that a public comment period was not required under Michigan law. Moreover, if problems arise, they can be resolved by amendments to the agreements or additional agreements.

It is important to emphasize that the public did have an opportunity to comment on the proposed Order for Judgment. The public comment period established by the Court provided the public with an opportunity to review the proposed Order for Judgment and intergovernmental agreements, and to provide suggestions or comments. The response was almost universally positive. The only overtly negative comment was submitted by an Isabella County commissioner who voted against the settlement and would have preferred to continue litigating the case. It is difficult to characterize the commissioner's submission as a "comment." Rather, it was a summary of the historical factual arguments the commissioner believed that Isabella County should have introduced at trial, and it was largely duplicative of the arguments considered by the Court in reviewing the parties' dispositive motion papers.

Three additional commenters—the police chief from the neighboring town of Shepard, a Union Township Supervisor, and the Isabella County Drain Commissioner—suggested an expansion of the intergovernmental agreements. The Shepard Police Chief, Michael J. Main, suggested that the law enforcement agreement provide for cross-certification of additional officers to enforce tribal law. He noted that Shepard police officers will occasionally assist with public safety concerns

within the Isabella Reservation. The Union Township Supervisor, John F. Barker, noted that the intergovernmental agreements did not resolve all the administrative and jurisdictional issues that may arise. He suggested that the settlement should specifically allow for additional agreements. The Isabella County Drain Commissioner, Richard F. Jakubiec, expressed concern about the effect of the settlement on established rights-of-way and concerns about lost revenue losses caused by the placement of additional land in trust.

As an initial matter, supplemental agreements are, in fact, possible if they are agreeable to the necessary parties. The intergovernmental agreements were not intended to provide a solution to every potential administrative or jurisdictional problem involving the Tribe, the State of Michigan, the United States, and the local government entities. The potential for expansion and improvement of those agreements does not mean the proposed Order for Judgment should not be entered. Moreover, as the Court noted at the hearing, the agreements are likely to improve public safety, streamline the resolution of otherwise complicated jurisdictional issues, and provide the County and City with revenue from trust land that would otherwise not be available. The Order for Judgment will not disrupt established rights-of-way. Accordingly, while the public comments provided an additional perspective on the settlement, they did not require any changes to the proposed Order for Judgment.

Additionally, Michigan law does not require the State or local governments to solicit public comments or hold a public meeting before settling a lawsuit. *See* Mich. Comp. Laws § 15.268(e) (permitting closed meetings to discuss pending litigation). Indeed, Governor Granholm is entitled to litigate and negotiate a settlement of the case on behalf of the State without the participation of the Attorney General or any local government entity. The Attorney General's participation as a

party to the case, while permissible, is unnecessary. *See* Mich. Const. art. V §§ 1, 8; *but see In re Certified Question*, 638 N.W.2d 409, 414 (Mich. 2002) (permitting Attorney General to initiate and settle litigation on behalf of the State of Michigan). Accordingly, the public comment period established by the Court provided a reasonable accommodation to the Attorney General's concerns.

## II

The settling parties committed a remarkable amount of time and effort to the intergovernmental agreements and proposed Order for Judgment. Their efforts yielded twelve detailed agreements that provide much greater certainty and stability for the parties and their constituents. Overlapping jurisdiction between the Saginaw Chippewa, the City of Mt. Pleasant, Isabella County, the State of Michigan, and the United States has the potential to create significant problems. The settling parties' demonstrated ability to negotiate and compromise reflects a reasoned investment for the future of all the people living on or near the Isabella Reservation.

Accordingly, it is **ORDERED** that the settling parties' joint motion for "Order for Judgment" [Dkt. # 271, 273] is **GRANTED**.

It is further **ORDERED** that all other pending motions [Dkt. # 222, 223, 243, 244, 245, 246] are **DISMISSED AS MOOT**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
The United States District Judge

Dated: December 17, 2010

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 17, 2010.

        s/Tracy A. Jacobs
        TRACY A. JACOBS